**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**VLADIMIR VYRKIN,**                                      18-cv-12106 (JGK)

       **Plaintiff,**

    **- against -**                                      <u>**MEMORANDUM OPINION**</u>
                                                         <u>**AND ORDER**</u>
**TRIBORO BRIDGE AND TUNNEL AUTHORITY,**
**ET AL.,[1]**

       **Defendants.**

---

**JOHN G. KOELTL, District Judge:**

The <u>pro se</u> plaintiff, Vladimir Vyrkin, brings this action against the Triboro Bridge and Tunnel Authority (the "TBTA") and Officer Edwin Cabrera alleging various claims relating to Mr. Vyrkin's arrest on the Bronx-Whitestone Bridge, including false arrest, excessive force, assault, battery, and malicious prosecution in violation of New York law and 42 U.S.C. § 1983. The defendants move for summary judgment dismissing all claims, asserting that Officer Cabrera had probable cause for Mr. Vyrkin's arrest and did not apply excessive force. For the following reasons, the defendants' motion is **granted** in part, and **denied** in part.

---

[1] Captain Michael Barnwell was dismissed from this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). ECF No. 14.

## I.

Unless otherwise noted, the following facts are undisputed.[2]

The TBTA is a public benefit corporation established through the New York Public Authorities Law.  N.Y. Pub. Auth. L. §§ 550, et seq.; Ds' 56.1 Stmt. ¶ 1.  Officer Cabrera was employed by the TBTA as a Bridge and Tunnel Officer and assigned to the Bronx-Whitestone Bridge facility on the date of the incident.  Ds' 56.1 Stmt. ¶¶ 4, 5.

At approximately 7:08 a.m. on September 14, 2017, Mr. Vyrkin entered lane 12 of the toll plaza of the Bronx-Whitestone Bridge in a red Chevrolet sedan.  Id. ¶¶ 6-7.  He was 75 years old.  Vyrkin Decl. ¶ 3.  In order to enter lane 12, Mr. Vyrkin passed by a two-foot by three-foot sign affixed to an eight-foot pole at the entrance of lane 12 that read "DO NOT BACK UP 2 PT SUMMONS."  Ds' 56.1 Stmt. ¶ 8.  Mr. Vyrkin was unable to pass through the toll in lane 12 because a vehicle in front of him was stopped.  Id. ¶ 7.  When he noticed that the vehicle in front of him was stopped, Mr. Vyrkin honked his horn and

_____

[2] The plaintiff failed to respond to or contest the defendants' statement of facts in the defendant's Rule 56.1 Statement. The defendants advised the pro se plaintiff, who was represented by counsel through discovery, of his Rule 56 obligations pursuant to Local Rule 56.2.  See ECF No. 45.  Therefore, the plaintiff is not excused from the requirements of Local Rule 56.1.  See Liverpool v. Davis, 442 F. Supp. 3d 714, 723 (S.D.N.Y. 2020).  Nevertheless, the Court is required to assure that the statements in the Rule 56.1 statement are supported in the record.  See Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001).  Moreover, the Court will "conduct an assiduous review of the record" in light of the special solicitude given to pro se litigants.  Holtz, 258 F.3d at 73.

reversed his vehicle.  Id. ¶ 10.  While reversing, Mr. Vyrkin was immediately beside the sign prohibiting drivers from backing up.  Id.  There was a school bus directly behind Mr. Vyrkin's vehicle.  Id. ¶ 11.

Officer Cabrera observed Mr. Vyrkin reversing his vehicle toward the school bus.  Id. ¶ 13.  Officer Cabrera, who was wearing a high-visibility reflective neon vest over his uniform and shield, first yelled for Mr. Vyrkin to stop reversing his vehicle and then approached Mr. Vyrkin's vehicle.  Id. ¶¶ 13-14, 16.  Officer Cabrera then asked Mr. Vyrkin to produce his license and registration several times, but Mr. Vyrkin did not comply.  Id. ¶¶ 17, 19.  Mr. Vyrkin also refused to move his vehicle to the side of the road.  Id. ¶ 19.  After Mr. Vyrkin refused to comply with Officer Cabrera's requests, Officer Cabrera called his sergeant for assistance.  Id. ¶ 20.  Sergeant Hilda Ellis arrived minutes later, dressed in her uniform.  Id. ¶ 21-22.  She also asked Mr. Vyrkin for his license and registration, but he did not comply.  Id.  Because of his repeated non-compliance, Sergeant Ellis authorized Officer Cabrera to arrest the plaintiff.  Id. ¶ 23.  Mr. Vyrkin contends that he did not know that Officer Cabrera was a TBTA officer. Vyrkin Decl. Ex. 11, Vyrkin Deposition, at 26-27.

Mr. Vyrkin left his vehicle and was handcuffed at 7:20 a.m., about 12 minutes after first arriving in lane 12.  Ds'

56.1 Stmt. ¶ 26.  Officer Cabrera escorted Mr. Vyrkin to a
nearby TBTA building about 200 feet away.  Id. ¶¶ 26-27.  To
arrive at the TBTA building, Officer Cabrera and Mr. Vyrkin had
to step over a 12-inch curb that separated the lanes of traffic
at the toll plaza.  Id. ¶ 27.  Mr. Vyrkin alleges that walking
over the curb caused him substantial pain due to a prior
surgery, but Officer Cabrera never touched Mr. Vyrkin's leg.
Id.  Mr. Vyrkin also suffers from asthma and has a pacemaker.
Vyrkin Decl. ¶ 4.  He experiences pain in his legs when walking
long distances.  Id. ¶ 8.  Mr. Vyrkin also alleges that the
handcuffing caused him pain in his arms, although he did not
tell Officer Cabrera that he was experiencing pain and he did
not seek medical treatment.  Ds' 56.1 Stmt. ¶ 28.

Once inside the TBTA building, Mr. Vyrkin was handcuffed to
a bench for about an hour, at which point Mr. Vyrkin was driven
to the 45th Precinct of the New York City Police Department.
Id. ¶¶ 29-30.  Mr. Vyrkin alleges that he was transported to the
45th Precinct while chained to the metal floor of a police
vehicle without seats.  Vyrkin Decl. Ex. 11, Vyrkin Deposition,
at 38.  Two surveillance videos capture (1) a partially
obstructed view of Mr. Vyrkin's encounter with Officer Cabrera
while Mr. Vyrkin was in his car; and (2) Mr. Vyrkin handcuffed
to a bench in the TBTA building.

4

Mr. Vyrkin was issued three summonses for unsafe backing, failure to comply with a lawful order, and obstruction of governmental administration.  Id. ¶ 31.  He was released from custody at about 9:30 a.m.  Id.  After two prior adjournments due to Mr. Vyrkin's lack of counsel, Mr. Vyrkin appeared in court on February 28, 2018 where he was acquitted on all counts. Id. ¶¶ 34-36.

Mr. Vyrkin filed a Notice of Claim with the TBTA on April 20, 2018, and then a Supplemental Notice of Claim on May 1, 2018.  Id. ¶ 37.  This case was filed on October 31, 2018 in the New York State Supreme Court and then removed to this Court on December 21, 2018.  Id. ¶ 39; ECF No. 5.

**II.**

The standard for granting summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).[3]  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all citations, alterations, emphasis, and internal quotation marks in quoted text.

any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not

credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

III.

The plaintiff has brought suit pursuant to New York law and § 1983, alleging violation of his Fourth Amendment rights. Specifically, the plaintiff has brought the following claims under either state or federal law or both: (1) false arrest; (2) malicious prosecution; (3) excessive force, assault, and battery; and (4) negligent hiring and supervision of Officer Cabrera by the TBTA. The plaintiff also refers to other torts, without pleading them as separate causes of action in his complaint.

A. Claims Against Officer Cabrera

1. False Arrest

The defendants argue that the false arrest claim against Officer Cabrera should be dismissed because Officer Cabrera had probable cause to arrest Mr. Vyrkin. A false arrest claim under Section 1983 based on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause, "is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Accordingly, "a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." Id. Probable cause

7

constitutes such justification, and therefore "is a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see also Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003); Bullard v. City of New York, 240 F. Supp. 2d 292, 297 (S.D.N.Y. 2003); L.B. v. Town of Chester, 232 F. Supp. 2d 227, 233 (S.D.N.Y. 2002).

An officer has probable cause to arrest when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly, 439 F.3d at 152. Probable cause for any charge acts as a complete defense to false arrest even where there is an absence of probable cause for other individual charges. Ackerson v. City of White Plains, 702 F.3d 15, 20 (2d Cir. 2012); see also Jaegly, 439 F.3d at 154. The probable cause inquiry assesses "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Ackerson, 702 F.3d at 19.

In this case, it is clear that Officer Cabrera had probable cause to arrest Mr. Vyrkin. Officer Cabrera witnessed Mr. Vyrkin reversing his vehicle in the toll plaza right next to a large sign prohibiting such reversing. Mr. Vyrkin reversed his

vehicle directly toward an oncoming school bus.  His actions
reasonably appeared to violate New York Vehicle and Traffic Law
Section 1211(a) ("The driver of a vehicle shall not back the
same unless such movement can be made with safety and without
interfering with other traffic.").

Mr. Vyrkin argues that the unlawful backing does not give
rise to probable cause to arrest.  However, pursuant to New York
law, a traffic infraction is a "petty offense" and a police
officer can arrest a person without a warrant for a "petty
offense" if the officer has probable cause to believe the person
committed the offense in the officer's presence. N.Y. Veh. &
Traffic L. § 155 (definition of traffic infraction); N.Y. Crim.
Proc. L. § 1.20(39) ("'Petty offense' means a violation or a
traffic infraction."); N.Y. Crim. Proc. L. § 140.10(1)-(2) (an
officer is authorized to arrest a person if the officer has
probable cause to believe the person committed a petty offense
in the officer's presence); Roper v. City of New York, No. 15-
cv-8899, 2017 WL 2483813, at *4 (S.D.N.Y. June 7, 2017); see
also Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)
("If an officer has probable cause to believe that an individual
has committed even a very minor criminal offense in his
presence, he may, without violating the Fourth Amendment, arrest

the offender.").  Therefore, Officer Cabrera had probable cause

to arrest Mr. Vyrkin for unlawfully reversing his vehicle.[4]

Accordingly, the defendants are entitled to summary

judgment dismissing the plaintiff's false arrest claims in

alleged violations of New York law and the Fourth Amendment.

### 2. Malicious Prosecution

The plaintiff also brings claims of malicious prosecution

and deprivation of liberty under Section 1983 and New York State

law on the basis that the defendants initiated criminal

proceedings against the plaintiff without probable cause and

with actual malice.  To sustain a § 1983 claim based on

malicious prosecution, a plaintiff must demonstrate conduct by

the defendant that is tortious under state law and that results

in a constitutionally cognizable deprivation of liberty.

Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 116 (2d Cir. 1995);

see also Shabazz v. Kailer, 201 F. Supp. 3d 386, 391 (S.D.N.Y.

2016) (collecting cases).  The elements of a malicious

prosecution claim under New York law are: "(1) the initiation or

continuation of a criminal proceeding against plaintiff;

(2) termination of the proceeding in plaintiff's favor; (3) lack

---

[4] Officer Cabrera also had probable cause to believe that Mr. Vyrkin failed to comply with his lawful orders and thereby violated N.Y. Vehicle and Traffic Law Section 1102.  Additionally, Officer Cabrera had probable cause to believe that Mr. Vyrkin obstructed governmental administration in violation of New York Penal Law § 195.05 by intentionally obstructing Officer Cabrera in Officer Cabrera's obligation to ensure the free flow of traffic at the toll plaza.

of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Shabazz, 201 F. Supp. 3d at 391-92.  "[T]he existence of probable cause to commence a proceeding is also a complete bar to a claim of malicious prosecution." Bullard, 240 F. Supp. 2d at 297.

Because there was probable cause to begin the criminal proceeding with respect to the unlawful backing charge, the plaintiff cannot sustain the malicious prosecution cause of action.  There was also probable cause to begin the criminal proceedings with respect to the failure to comply with a lawful order and obstructing governmental administration charges. Officer Cabrera and Sergeant Ellis both ordered that Mr. Vyrkin produce his license and registration and he failed to do so on multiple occasions.  This failure to cooperate interfered with Officer Cabrera's ability to ensure the free flow of traffic at the toll plaza because the officers had to call a tow truck to remove Mr. Vyrkin's car, creating a traffic jam on the bridge during rush hour.

Separately, the plaintiff has not shown that Officer Cabrera acted with malice in initiating the prosecution.  A showing of malice can include that the officer acted "with a wrong or improper motive" or anything other than "a desire to see the ends of justice served." Fulton v. Robinson, 289 F.3d

11

188, 198 (2d Cir. 2002).  In this case, the plaintiff has failed to produce any evidence that Officer Cabrera acted with malice.

Accordingly, the defendants are entitled to summary judgement dismissing the plaintiff's malicious prosecution claims.

### 3. Excessive Force

The plaintiff asserts that the defendants acted with excessive force in violation of his constitutional rights.  "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard." Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  A police officer's use of force is "excessive" in violation of the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances known to the officer.  Lennon v. Miller, 66 F.3d 416, 425-26 (2d Cir. 1995); see also Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004).  To determine whether the amount of force applied to a plaintiff was unreasonable, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  Excessive force claims

require "serious or harmful," not "de minimis" use of force.

Drummond v. Castro, 522 F. Supp. 2d 667, 678-79 (S.D.N.Y. 2007).

Mr. Vyrkin asserts that Officer Cabrera used excessive force by forcibly removing him from his vehicle, forcing him to walk to the TBTA building thereby injuring his leg, and by handcuffing him with excessively tight handcuffs.  At the very least, there are issues of fact that preclude summary judgment on the excessive force claim based upon the manner and extent to which Mr. Vyrkin was handcuffed.

On an excessive force claim regarding handcuffing, "a plaintiff asserting a claim for excessive force need not always establish that [the plaintiff] alerted an officer to the fact that [the] handcuffs were too tight or causing pain," and the operative inquiry is "whether an officer reasonably should have known during handcuffing that [the officer's] use of force was excessive." Cugini v. City of New York, 941 F.3d 604, 613 (2d Cir. 2019).  A plaintiff satisfies this threshold if "the unreasonableness of the force was apparent" or the plaintiff signaled the plaintiff's distress "verbally or otherwise, such that a reasonable officer would have been aware of [the plaintiff's] pain." Id.  "[A] plaintiff's testimony about the injuries and subsequent treatment alone is sufficient to support an excessive force claim on a motion for summary judgment" with respect to an excessive force claim regarding handcuffing.

Fernandez v. City of New York, 457 F. Supp. 3d 364, 389
(S.D.N.Y. 2020) (denying motion for summary judgment on
excessive force claim concerning handcuffing), reconsideration
denied, No. 17-cv-789, 2020 WL 3448019 (S.D.N.Y. June 24, 2020).

     In this case, the plaintiff alleges that Officer Cabrera
applied handcuffs in an excessively tight fashion.  He alleges
three stages of excessive force when handcuffing.  First, he
argues that the handcuffs were initially applied too tightly;
second, he alleges that he was handcuffed in a painful manner in
the TBTA building; and third, he alleges that the way he was
handcuffed while transported to the 45th Precinct was
excessively painful.

     First, with respect to Mr. Vyrkin's initial handcuffing,
there is a dispute of material fact as to the extent of his
injuries as a result of that handcuffing.  The defendants argue
that the surveillance video shows that Mr. Vyrkin was not in
pain, but the video is equivocal.  Mr. Vyrkin testified at his
deposition that the handcuffing "was like torture," and that he
was "in pain when [Officer Cabrera] lifted my arms."  Vyrkin
Decl. Ex. 11, Vyrkin Deposition, at 32.  Mr. Vyrkin's alleged
crimes were not particularly serious, and the defendants have
not shown that Mr. Vyrkin posed a threat of danger, that he was
resisting arrest, or that he was attempting to flee.  See
Graham, 490 U.S. at 396.  The video shows hardly any detail with

14

respect to the initial application of the handcuffs, and given Mr. Vyrkin's testimony, the defendants are not entitled to summary judgment on that issue.  See Fernandez, 457 F. Supp. 3d at 389.

The surveillance video in the TBTA building shows that Mr. Vyrkin exhibited signs of discomfort with the handcuffs and complained about the handcuffs being too tight.  The handcuffs were attached to a strap tied to a bench, and after complaining, the strap was loosened.  Given the inconclusive evidence, the minor severity of the alleged crimes, and the lack of evidence that Mr. Vyrkin posed a danger, flight risk, or resisted arrest, the defendants are not entitled to summary judgment dismissing the excessive force claim with respect to the handcuffing in the TBTA building.

The plaintiff also argues that the way he was handcuffed to the floor of the police vehicle caused him injury while being transported to the 45th Precinct.  Mr. Vyrkin alleges that he was handcuffed and chained to the metal floor of the vehicle without seats while being transported.  The defendants do not contest that Mr. Vyrkin was chained to the floor of the police vehicle in transport, but assert that any injury was de minimis.  However, Mr. Vyrkin asserts that due to his age and prior medical conditions, the use of force was excessive.  There is an

issue of material fact as to whether the use of force in transporting Mr. Vyrkin to the 45th Precinct was excessive.

Accordingly, because there are disputed material facts with respect to Mr. Vyrkin's excessive force claim, the defendants are not entitled to summary judgment on that claim.  See, e.g., Vitalone v. City of New York, No. 15-cv-8525, 2018 WL 1587591, at *7 (S.D.N.Y. Mar. 27, 2018) (denying summary judgment because the court could not conclude as a matter of law that the defendants did not use excessive force).

### 4. Qualified Immunity

The defendants argue that Officer Cabrera is protected from liability by qualified immunity.  The only remaining claim against Officer Cabrera is for excessive force.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).  "[E]ven if defendants' actions were unreasonable under current law, qualified immunity protects officers from the sometimes hazy border between excessive and acceptable force."  Kerman v. City of New York, 261 F.3d 229, 239 (2d Cir. 2001).

It has long been clearly established that the use of
excessive force by a law enforcement officer is
unconstitutional.  See Graham, 490 U.S. at 395.  Whether the use
of force in this case was sufficiently reasonable so that it was
objectively reasonable for Officer Cabrera to believe that his
actions did not violation Mr. Vyrkin's constitutional rights
depends on the resolution of factual issues that cannot be
resolved on this motion for summary judgment.

### B. Claims Against the TBTA

The plaintiff alleges three theories of liability against
the TBTA: (1) respondeat superior for the plaintiff's state law
claims against Officer Cabrera; (2) Monell liability; and
(3) direct liability pursuant to New York law for negligent
hiring and supervision.

The plaintiff's state law claims for false arrest,
malicious prosecution, assault, and battery can only be
sustained against the TBTA on a respondeat superior theory.  See
Linson v. City of New York, 951 N.Y.S.2d 167, 168 (App. Div.
2012).  Mr. Vyrkin's federal claims against the TBTA cannot be
sustained on a theory of respondeat superior.  See Batista v.
Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  Instead,
municipalities can be sued directly under Section 1983 for
constitutional deprivations inflicted pursuant to a custom or
policy.  See generally Monell v. Dep't of Soc. Servs. of the

City of New York, 436 U.S. 658 (1978).  The TBTA is considered a municipality for purposes of the Monell doctrine.  See N.Y. Pub. Auth. L. § 552 et seq.; see also Byrd v. Metro. Transit Auth., No. 15-cv-1364, 2015 WL 4546718, at *2 (E.D.N.Y. July 28, 2015).  The plaintiff can also bring a negligent hiring and supervision claim directly against the TBTA pursuant to New York law.

### 1. Respondeat Superior

Mr. Vyrkin's false arrest and malicious prosecution claims against Officer Cabrera fail on the merits, and therefore they cannot be sustained against the TBTA on a theory of respondeat superior.  The defendants argue that the remaining state law claims should be dismissed because the plaintiff failed to serve a Notice of Claim on the TBTA in a timely fashion with respect to all claims except for malicious prosecution.  In a tort action against New York City (the "City") or one if its employees alleging violations of New York law, the plaintiff must serve a notice of claim on the City before filing suit and within 90 days after the claim arises.  N.Y. Gen. Mun. L. §§ 50-k(6); 50-e(1)(a); 50-i(1); see, e.g., Wagman v. Hooper, 29 N.Y.S.3d 519, 521 (App. Div. 2016).  Timely filing of a Notice of Claim is also a condition precedent to bringing suit against the TBTA and its employees.  N.Y. Pub. Auth. L § 569-a(2) (incorporating Gen. Mun. L. § 50-e).  The plaintiff alleges specifically that Officer Cabrera was acting within the scope of

his employment, and Mr. Vyrkin seeks damages from the TBTA for Officer Cabrera's actions.  Therefore, timely service of a notice of claim on the TBTA is a condition precedent to bringing the state law claims against the defendants.

Apart from the malicious prosecution claim, all of the plaintiff's claims accrued on September 14, 2017, the date that Mr. Vyrkin was arrested and subsequently released.  See Lynch v. Suffolk Cnty. Police Dep't, Inc., 348 F. App'x 672, 676 (2d Cir. 2009) (cause of action for false imprisonment accrues on the date the prisoner is released from confinement); Bradshaw v. City of New York, No 15-cv-2166, 2017 WL 6387617, at *4 (E.D.N.Y. Aug. 22, 2017) (intentional infliction of emotional distress and negligence claims accrued on date of arrest); Anderson v. City of Mount Vernon, No. 09-cv-7082, 2013 WL 12387017, at *4 (S.D.N.Y. May 8, 2013), report and recommendation adopted, 2014 WL 1877092 (S.D.N.Y. Mar. 28, 2014) (assault and battery, which would include any state law claim of excessive force, accrue on the date of the application of force).  The plaintiff served the TBTA with a Notice of Claim on April 20, 2018, after the 90-day window elapsed.

Service of the Notice of Claim for the malicious prosecution claim was timely because a malicious prosecution claim accrues on the date the criminal proceeding is terminated in favor of the plaintiff.  See, e.g., Mejia v. City of New

19

York, 119 F. Supp. 2d 232, 278 (E.D.N.Y. 2000).  The criminal

proceeding terminated in Mr. Vyrkin's favor on February 28,

2018.

Accordingly, the defendants are entitled to summary

judgment dismissing all of the plaintiff's state law tort

claims, apart from the malicious prosecution claim, for failure

to serve the Notice of Claim on the TBTA in the required time.

The malicious prosecution claim fails for the independent

reasons, as described above, that the defendants had probable

cause to begin the criminal proceedings and Mr. Vyrkin failed to

show malice.  Therefore, all of the plaintiff's state law claims

are dismissed against all defendants.  Mr. Vyrkin's federal

claims are not subject to the state law notice of claim

provisions.  See Felder v. Casey, 487 U.S. 131, 140 (1988)

("[F]ederal courts have all, with but one exception, concluded

that notice-of-claim provisions are inapplicable to § 1983

actions brought in federal court. . . .  [W]e fully agree with

this near-unanimous conclusion of the federal courts.");

Day v. Moscow, 955 F. 2d 807, 813-14 (2d Cir. 1992) (filing a

notice of claim was not a condition precedent to bringing a

§ 1983 claim in federal court); see also Goode v. Manchester,

No. 5:18-cv-116, 2019 WL 1385762, at *4 (N.D.N.Y. Mar. 27, 2019)

(state notice of claim requirements are not applicable to § 1983

claims in federal court); Fanelli v. City of New York, No. 13-

cv-1423, 2013 WL 6017904, at *5 (S.D.N.Y. Nov. 1, 2013) ("New York State notice of claim requirements do not apply to claims brought pursuant to Section 1983.").

## 2. **Monell**

To bring a claim against a municipality under § 1983, the plaintiff must allege that the challenged conduct was "performed pursuant to a municipal policy or custom." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004); Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992); see generally Monell, 436 U.S. at 694. To identify a "policy or custom," the plaintiff must demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind the injuries alleged. Bd. of Cty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997). The alleged policy does not need to be contained in an explicitly adopted rule so long as the unlawful practices of city officials are so "persistent and widespread . . . as to constitute a custom or usage with the force of law." Sorlucco, 971 F.2d at 870-71; see also Connick v. Thompson, 563 U.S. 51, 61 (2011) (stating that the acts of city officials must be "so persistent and widespread as to practically have the force of law"); see also Viruet v. City of New York, No. 16-cv-8327, 2019 WL 1979325, at *8 (S.D.N.Y. May 3, 2019).

The plaintiff can satisfy the "policy or custom" requirement by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Tieman v. City of Newburgh, No. 13-cv-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).

The plaintiff has not alleged or produced any evidence to prove that the TBTA had a policy or custom that caused the plaintiff to suffer constitutional injury.  The plaintiff has not produced any evidence relating to the TBTA's hiring, training, or supervision practices for its officers.  Because the plaintiff offers no evidence of a policy or custom, the defendants are entitled to summary judgment dismissing the Monell claim against the TBTA.

### 3. Negligent Hiring and Supervision

For the same reason that Mr. Vyrkin's Monell claim fails, Mr. Vyrkin's negligent hiring and supervision claims fail. Pursuant to New York law, claims of negligent hiring, supervision, or retention require the plaintiff to show, in

addition to the standard elements of negligence, "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir.2004). Mr. Vyrkin has not produced any evidence that the TBTA knew or should have known that Officer Cabrera had a propensity for any of the claims alleged. Similarly, the plaintiff has not produced any evidence that the TBTA was negligent in hiring Officer Cabrera. Because the plaintiff failed to allege or offer evidence for a necessary element of the negligent hiring and supervision claims, the defendants are entitled to summary judgment dismissing those claims.

### C. Miscellaneous Claims

The plaintiff discusses various other claims that are either not pleaded in the complaint or referenced in passing without any explanation. These include violation of a right to a fair trial, intentional infliction of emotional distress ("IIED"), and Due Process and Equal Protection violations pursuant to the Fourteenth Amendment. For the first time in his opposition brief to the motion for summary judgment, Mr. Vyrkin alleges that he was deprived of a right to a fair trial because

Officer Cabrera allegedly lied at the trial of the charges against Mr. Vyrkin.  The defendants are entitled to summary judgment dismissing the deprivation of a right to a fair trial claim because it was not raised in the complaint, and the plaintiff cannot assert new causes of action in the opposition brief to the motion for summary judgment.  See Stapleton v. Barrett Crane Design & Eng'g, 725 F. App'x 28, 32 (2d Cir. 2018) (affirming district court's decision not to consider a new theory of liability raised in a brief in opposition to summary judgment).  The IIED claim fails because the plaintiff did not timely file a notice of claim against the TBTA for this claim, and independently, because the plaintiff cannot prove the elements of the tort.  See Lopez v. City of New York, No. 14-cv-1660, 2014 WL 5090041, at *4 (S.D.N.Y. Oct. 10, 2014) (dismissing IIED claim for failing to comply with New York's notice of claim requirement and because the plaintiff failed to plead the elements of the tort adequately); see also Howell v. New York Post Co., 612 N.E.2d 699, 702 (N.Y. 1993).  With respect to the Section 1983 claims pursuant to the Due Process Clause of the Fourteenth Amendment, while Mr. Vyrkin does make fleeting references to those causes of action in the complaint, he does not provide any substantiating allegations or evidence that could support such a claim.  Accordingly, the defendants

24

are also entitled to summary judgment dismissing the § 1983 claims alleging violations of the Fourteenth Amendment.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the reasons stated above, the defendants' motion for summary judgment dismissing the claims is **denied** with respect to the plaintiff's § 1983 excessive force claim against Officer Cabrera alone.  The defendants' motion for summary judgment dismissing the claims is **granted** with respect to all other claims.  The Triboro Bridge and Tunnel Authority is dismissed from the case.  The Clerk is directed to close Docket No. 40.

**SO ORDERED.**

Dated:   **New York, New York**
         **March 2, 2021**                        **/s/ John G. Koeltl**
                                             **John G. Koeltl**
                                    **United States District Judge**